UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SMITH & NEPHEW, INC.  )  |  |  |
| Plaintiff, ) |  |  |
| ) |  |  |
| ) |  |  |
| v. ) | CIVIL ACTION NO. 10-cv-10951-RWZ |  |
| ) |  |  |
| INTERLACE MEDICAL, INC. ) |  |  |
| Defendant ) |  |  |

**PLAINTIFF SMITH & NEPHEW, INC.'S
<u>REPLY IN SUPPORT OF MARKMAN BRIEF</u>**

In its *Responsive Markman Brief* ("Interlace's Br."), Interlace ignores the presumption that claims that do not use the term "means" are not subject to §112 ¶ 6, mischaracterizes the testimony of the inventors and one of the attorneys who prosecuted the patent on a number of issues, and improperly relies on ambiguous statements in the prosecution history to support its proposed limitations to the scope of the claims. Read in its entirety, Interlace's goal is clear: to construe the claims of the '459 Patent not as they are intended, but so that Interlace can avoid a finding of infringement. As set forth below and in its *Opening Brief*, only S&N's proposed constructions read the full and ordinary meaning into the disputed claim terms.

## I.    Interlace Ignores – And Fails To Rebut – The Presumption That The Claims Of the '459 Patent Are Not Means-Plus-Function Claims.

Interlace ignores the presumption that applies when the disputed claim limitations do not include the word "means." Specifically, the district court should impose upon the party advocating a construction under § 112 ¶ 6 "…the burden of overcoming the presumption by demonstrating that the claim fails to recite sufficiently definite structure or recites a function without reciting sufficient structure for performing that function." *Linear Technology Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319-20 (Fed. Cir. 2004) (finding that the district court had erred in placing the burden on the other party to establish that the claim recited sufficient structure) (internal quotations omitted). Whether a term has an understood meaning in the art is relevant to the determination of whether that term recites sufficient structure. *Id*. Technical dictionaries and expert testimony are indicative of the understanding of persons of skill in the technical arts, and are appropriate evidence to consider with respect to the issue of claim construction where they comport with the intrinsic evidence. *Id*.; *see also*, *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359 (Fed. Cir. 2004).

Interlace cites *no* evidence to meet its burden of establishing that "drive" fails to recite

sufficiently definite structure. Instead it takes aim at the evidence submitted by S&N in support of the ordinary meaning of the term "drive" as used in the technical art of mechanical design, by using select and incomplete quotes from testimony of inventors and the prosecution attorney, and questioning (with no evidence to support the contrary) the declaration of S&N's expert. *Interlace's Br.* at p. 5-9. As just one example, Interlace states that Ms. Drucker "agreed that a drive was 'any mechanism that performed the function in this claim limitation.'" *Id.* at p. 6. Interlace fails to cite her earlier testimony, which supports S&N's contention that the ordinary meaning of the term "drive" is a configuration of components that transmits power in a machine. *Drucker Dep.*, p. 75:20-76:7 (Exh. 1) (stating that a drive is "something that takes an energy or a power source, and translates it into a desired motion"). Interlace took similar liberties in its citations to other testimony. *See Cesarini Dep.*, p. 36:17-20 (Exh. 2) (defining a "drive" as "a series of mechanical components for the transmission of power"); *DiBerardino Dep.*, p. 32:19-33:4 (Exh. 3) (understanding a "drive" to be "something that impacts something else…its force would impact something else").

In contrast, S&N identified a host of evidence supporting the ordinary meaning of the term "drive," including the '459 Patent itself, expert testimony, and dictionary definitions. *Opening Br.* at p. 6-11. This evidence shows that "drive" should be viewed similar to the way that the Federal Circuit viewed "circuit" in *Linear Technology*, where a technical dictionary defined "circuit" as "the combination of a number of electrical devices and conductors that, when interconnected to form a conducting path, fulfill some desired function." *Linear Technology*, 379 F.3d at 1320. The Federal Circuit found that "circuit," coupled with a description of the circuit's operation, conveyed sufficient structural meaning to one of ordinary skill. *Id.* That is precisely the case here: "drive" is coupled with a description of the claimed

motion (reciprocation, translation, and rotation). Interlace has cited *no* evidence to the contrary, and the term "drive coupled to…" should not be construed as a means-plus-function claim.

## II. Interlace Misinterprets The Distinction Made During Prosecution With Respect to the *Glatzer* Reference.

In the alternative, Interlace argues that the term "drive coupled to…" should be limited to a "single mechanism" that "directly transfers" a rotational force in a single direction, based on some statements it found in the prosecution history regarding a prior art reference, *Glatzer*. *Interlace's Br.* at 10-13. While somewhat confusing, Interlace argues that S&N "defined drive in a manner that excluded *Glatzer*," thereby limiting the claimed drive to a single mechanism and excluding from the scope of the term "drive" a device "in which the cutter element is provided with different mechanisms to achieve rotational and translational forces." *Id*.

As the Federal Circuit has cautioned, the prosecution history "represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation…" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005). Thus, a limitation in scope based on prosecution history must be due to a "clear and unmistakable disavowal of scope during prosecution." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366,1374 (Fed. Cir. 2008) (internal quotations omitted).

As a preliminary matter, at *no* point during prosecution did the specific issue of a definition of "drive" arise, including in any discussion related to *Glatzer*. The discussion cited by Interlace related to the forces to which the cutter element in *Glatzer* responded. Contrary to Interlace's claim that it is "undisputed" that "all of the energy for rotating and reciprocating the cutter member [in *Glatzer*] comes from the same rotational force," S&N argued during prosecution that the *Glatzer* cutter element moved in response to *both* a rotational and an axial force. *Interlace's Br.*, at p. 11, Exh. K. S&N also argued in two later submissions that *Glatzer's*

cutter element responded to two different rotational forces in two different directions (clockwise and counterclockwise).  *May 4, 2006 Reply*, at p. 8 (Exh. 4); *Pre-Appeal Brief*, at p. 2 (Exh. 6).

The amendment to the claim language that was ultimately allowed makes it clear that discussions with the examiner regarding the *Glatzer* reference *did not relate* to the definition of "drive."  These amendments – which are present in the allowed Claim 1, as well as other allowed claims – clarified that ***only*** a rotational force is applied to the drive, and that force is ***in a single direction***.  Exh. 4 at p. 2.  They had nothing to do with the scope of the term "drive," and did not limit that scope to a "single mechanism" that "directly transfers" rotational forces.

### III.  Interlace's Cites To The Prosecution History Are Not "Clear And Unmistakable Disavowals" Of Scope.

Interlace urges this Court to ignore the plain and ordinary meaning of the term "attached" and the use of that term in the claims, in light of an ambiguous statement it has found in the prosecution history regarding *Glatzer*.  *Interlace's Br.* at 13-14.  In the context of the entire prosecution, this argument fails to hold water.

S&N's basic argument during prosecution was simple – *Glatzer* does not disclose a drive member with a helical groove attached to a cutting member.  Exh. 8, p. 8; *see also Glatzer* Patent, FIG. 1, 3, 6 (Exh. 5).  Interlace cites to statements made by S&N made with respect to various parts in the *Glatzer* drawings.  S&N made the same statements in the context of discussions regarding both claim 3 and a second claim (9), which included an additional and narrower "attached" limitation, *i.e.*, that the drive member does not move relative to the cutting member.  Exh. 8. at p. 2-3; 8-9.  Then, in the two *subsequent* prosecution filings, S&N made similar statements only with respect to the narrower claim 9.  Exh. 4, at p. 7-13; Exh. 6, at p. 1-4.  However, both the broader and more limited claims were ultimately allowed as part of independent claim 1 and dependent claim 10.  Exh. 7.  In the absence of an unambiguous

disclaimer, and in light of the fact that both the broad and more limited claims were ultimately allowed, Interlace's proposed limitation to the ordinary meaning of the term "attached" is improper, as it would read dependent claim 10 out of the patent altogether.

### IV. Interlace's Proposed Construction Of "Cutting Window" Is Not Consistent With Ordinary Usage Of The Term, Or With The Evidence.

Interlace's suggestion that a "cutting window" must cut tissue flies in the face of ordinary usage of the English term "window." *Interlace's Br.*, at 15-17. As described in S&N's Opening Brief, a "window" generally suggests an opening through which something is done, such as a "bank teller window." S&N's proposed construction gives exactly that meaning to the term, without limiting the scope of the term to preferred embodiments described in the specification. Interlace also takes liberties with the evidence it cites in support of its construction. For example, Interlace suggests Ms. Drucker testified that one of the purposes of the cutting window could be to engage the tissue to be cut. *Id*. at 15. Conveniently, Interlace did not include her earlier testimony that she would "describe the cutting window as the opening in the outer tube." *Drucker Dep.* at p. 50:18-22 (Exh. 1).

### V. The Drive Member And Translation Piece Reciprocate *Relative To Each Other.*

Limiting the claimed "translation piece" to a "non-reciprocating piece of the drive" is inconsistent with the claims. In short, the claims do not recite that one or the other of the drive member and the translation piece remain stationary. The claims simply state that the rotary driving of the drive member results in the "simultaneous reciprocation of the drive member *relative to the translation piece*." Claim 1, '459 Patent. In other words, the claimed reciprocation occurs *relative to* the translation piece and the drive member and, contrary to Interlace's implicit argument, nothing in the claims requires one of the pieces to remain stationary while the other piece objectively "reciprocates."

| | |
|---|---|
| Date:  November 3, 2010 | /s/ Maia H. Harris |
| | Joseph J. Leghorn (BBO # 292440) |
| | Maia H. Harris (BBO #648208) |
| | NIXON PEABODY LLP |
| | 100 Summer Street |
| | Boston, Massachusetts  02110 |
| | (617) 345-1000 |
| | (617) 345-1300 (facsimile) |
| | |
| | Counsel for Plaintiff, Smith & Nephew, Inc. |

### CERTIFICATE OF SERVICE

I, Maia H. Harris, do hereby certify that a true copy of the above document was filed through the Court's ECF system on this 3rd day of November 2010 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Maia H. Harris
Maia H. Harris